**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TERESA GOOD,**

        **Petitioner,**

**v.**                                            **Civil Action No. 1:06cv9
                                                Criminal Action No. 1:04cr41(1)
                                                (Judge Keeley)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**OPINION/REPORT AND RECOMMENDATION**

On January 17, 2006, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. On June 5, 2006, the petitioner filed an amended motion to vacate. On July 7, 2006, the undersigned conducted a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to file an answer. The respondent filed an answer on August 7, 2006, to which the petitioner replied on September 5, 2006. This case is before the undersigned pursuant to LR PL P 83.01, et seq., and Standing Order No. 4.

**I.   Facts**

**A.   Conviction and Sentence**

On June 30, 2004, the petitioner signed a plea agreement by which she agreed to plead guilty to Count Six of the Indictment, distribution of crack cocaine in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C). See Plea Agreement (Crim. Dckt. 66) at ¶ 1. In the plea agreement, the petitioner waived her right to appeal and to collaterally attack her sentence provided

her base offense level was thirty-four or lower.[1]  Id. at ¶ 11.  Specifically, the petitioner's plea agreement contained the following language regarding waiver:

> 11.  Ms. Good is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence with a base offense level of thirty-four or lower under the U.S.S.G. (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, in exchange for the concessions made by the United States in this plea agreement.  The defendant also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28 United States Code, Section 2255.  The parties have the right during any appeal to argue in support of the sentence.

On August 25, 2004, the petitioner entered her plea in open court.  At that time, the petitioner was 42 years old and had an eighth grade education.  Plea Transcript (Crim. Dckt. 107) at 4.  The petitioner stated she could read, however.  Id.  Although the petitioner had not been employed prior to her arrest, she had previously worked for York Bronze making plaques.  Id. at 4-5.  The petitioner was asked whether she was on any drugs or prescription medications.  Id. at 5.  The petitioner stated that she takes nerve medicine three times a day, but she could not recall the name of the medication. Id.  The petitioner stated that although she had taken a pill earlier that morning, she knew where she was and what she was doing.  Id.  The petitioner also asserted that the medication had not made her confused or drowsy.  Id. at 5-6.  Additionally, the petitioner confirmed that she did not have any problems with her hearing or eyesight which would affect her ability to understand the proceedings. Id. at 6.

The Court then read Count Six of the Indictment in open court.  Id.  The petitioner confirmed

---

[1] The petitioner's base offense level was ultimately determined to be 33.  See Sentencing Transcripts (Crim. Dckt. 104) at 6.

that she had spoken with counsel earlier in the day, that she had a copy of the proposed plea agreement, and that it was the same agreement that she had reviewed prior to the hearing. Id. at 6. The petitioner was asked whether or not she understood the nature of the charge and that the plea agreement essentially stated that she intentionally and willfully distributed crack. Id. at 7. The petitioner stated that she understood. Id. After this exchange, the government summarized the terms of the plea agreement in open court. Id. at 7-10.

Afterward, the petitioner was asked whether she had an opportunity to meet with counsel and discuss the plea agreement before signing it. Id. at 10-11. The petitioner stated that she had. Id. at 11. The petitioner confirmed that she was satisfied that counsel spent sufficient time explaining the plea to her prior to her signing the agreement. Id. The petitioner further confirmed that at the time she signed the plea agreement, she was fully informed and knew what she was doing. Id. The petitioner did, however, inform the Court that she did not understand the entire agreement. Id. The Court then stated that the agreement would be explained in more detail during the hearing. Id.

The Court first explained paragraph two of the agreement in which the maximum penalties are set forth. Id. at 12. The Court explained that the petitioner's maximum penalty was 20 years, and that even if the guidelines called for a sentence beyond 20 years, the petitioner's sentence could not be more than the statutory maximum. Id. The petitioner stated that she understood. Id. The Court also explained that additional penalties, such as a fine, a mandatory special assessment, and a term of supervised release could also be imposed. Id. at 12-13. The petitioner stated that she understood. Id. The Court then reviewed the nonbinding recommendations in the plea agreement and noted that it appeared as if the petitioner qualified for a third level reduction for timely acceptance. Id. at 14.

Moving on to paragraph eight, the Court noted that the petitioner had stipulated to total drug conduct of 150-500 grams. Id. at 14-15. The petitioner stated that she either did not understand or did not agree with that amount. Id. at 15. Therefore, the Court conducted a thorough review and explanation of that paragraph with the petitioner. Id. at 15-16. The Court noted that 150-500 grams would guarantee the petitioner a high guideline range, and that by pleading guilty to Count Six, she was avoiding a mandatory minimum sentence of 10 years. Id. at 15. In addition, the Court explained that should the petitioner go to trial, and should she be convicted on Count One of the Indictment, conspiracy to distribute, she would face a mandatory minimum of 10 years and a maximum penalty of 40 years. Id. Moreover, the Court explained that should she proceed to trial, the government would be put to a higher burden of proof, beyond a reasonable doubt, and that if the government would reach its burden and prove she was responsible for more than 150 grams, her statutory maximum would then double to 40 years. Id. at 16. Therefore, without knowing the petitioner's exact base offense level or criminal history, the Court acknowledged that by pleading guilty to Count Six and stipulating to 150-500 grams, the defense may be strategically capping the petitioner's exposure at 10 years. Id. at 16.

At this point, defense counsel stated he had examined the petitioner's criminal history, but was not yet able to tell whether the petitioner's criminal history was likely to be I or II based on the information currently provided to counsel. Id. at 16-17. The Court then explained to the petitioner that should she be a criminal history category I, and receive the recommended three level reduction, she could receive a sentence of 108–135 months. Id. at 17. However, the Court also explained that should the petitioner's criminal history category be a II, the petitioner would then be exposed to a sentence range of 121-151. Id. at 17. The Court noted that during this explanation, defense counsel

4

was showing the petitioner the sentencing charts to which the Court was referring. Id. at 17. The Court then explained that the stipulation was to put the parties and the Court on notice that the petitioner's relevant conduct was between 150-500 grams, whether she sold the crack or should have reasonably foreseen that it was going to be done. Id. at 18. The Court further explained that with that amount of drug weight, the petitioner was likely to get a high sentence. Id. The Court asked the petitioner whether she had any further questions in this respect, and the petitioner answered in the negative. Id. at 18.

Next, the Court explained how the amount of drugs impacted the petitioner's sentence. Id. at 18-19. Specifically, the Court informed the petitioner that there are two things critical in determining a drug sentence under the guidelines; one is drug weight, and the other is the defendant's criminal history category. Id. at 18. After this thorough explanation, the Court asked the petitioner what her concerns were about the stipulation contained in the plea agreement. Id. at 19. The petitioner stated that counsel told her she was agreeing to 150 grams. Id. The Court asked the petitioner if she had concerns about 150 grams. Id. The petitioner stated that she did not. Id. Instead, the petitioner stated that she had concerns about the 500 grams. Id. The Court explained, however, that it did not matter if the petitioner's actually relevant conduct was determined to be 150 grams or 500 grams, because the guideline level does not change if her relevant conduct falls anywhere between those two numbers. Id. The Court explained that the number is merely a range and so long as the petitioner's relevant conduct fits anywhere in between those numbers, her sentence will be the same under the guidelines. Id. at 20. The petitioner stated that she understood and that she did not have any further questions. Id. at 19-20.

After ascertaining that the petitioner understood the stipulation and how it relates to the

5

calculation of her sentence, the Court questioned the petitioner with regard to the waiver provision contained in paragraph 11 of the plea agreement. Id. With regard to waiver, the following exchange occurred:

> **The Court:** Now, let's move on then to the final paragraph that I think I should bring to your attention, and that is paragraph eleven. You have agreed in paragraph eleven to give up your right to appeal your sentence to a higher court and have them look over what you may say I have done that's a mistake if you're sentenced, under these guidelines at a Level Thirty-Four, base offense level of thirty-four or lower, okay.
> 
> So, sometimes people walk out of a sentencing hearing, Ms. Good, and they will say well, I don't think that was right and I'm going to appeal. And then their lawyer says to them, you gave up your right of appeal if you were sentenced at a certain guideline level. And that's what's happening here with you.
> 
> Now, I will tell you that in this District, this kind of paragraph is demanded by the United States. Okay? And it's not that any particular lawyer isn't working hard for his or her client and giving up something, but – because it's demanded by the United States.
> 
> However, you are giving something up, and I want to make sure that before we go forward here today, you understand that you have a right to go to trial and not give up your right of appeal. But even if you appealed, once you plead guilty, your right of appeal is limited, limited, but important. You have the right to appeal whether or not I have the jurisdiction to hear your case. You have the right to appeal whether or not I sentenced you appropriately under the guidelines. And that's usually the big issue, you know, somebody says I think I got too much time. The third issue would be whether or not your plea was knowing and voluntary. And that's why I'm asking you all these questions today and talking to you, and explaining this, because I want to make sure, absolutely, you know what you're doing. Okay?
> 
> **The Defendant:** Okay.
> 
> **The Court:** And finally, the fourth thing that comes up usually not on appeal, but on a writ, is whether or not your attorney effectively represented you. And it's very, very important to get any of those kinds of issues out on the table today and not later. So if you think there are issues like that you want me to consider, you need to raise them now. Are there any?
> 
> **The Defendant:** No, ma'am.
> 
> **The Court:** No? All right. What you're giving up here then is if you're sentenced at a Level Thirty-Four or lower, you're giving up your right to appeal to the higher court and say Judge Keeley made a mistake. You're giving up your right to come back to me on a writ,

what's called a collateral attack, but it also goes by the name petition for writ of habeas corpus, saying here's new evidence or something you didn't consider and I want you to redo my case.

Now, once you plead guilty, the one thing you can't appeal on is to go to a higher court and say I'm not guilty and that's the mistake, I said I was guilty, but I'm not guilty. Once you plead guilty, you're pretty well locked into the plea of guilt. Do you understand?

**The Defendant:** Yes.

**The Court:** Okay. So this is a very important and very final thing that you're doing today with regard to the case. And I'm not going to rush you through it. I want to make sure that you understand exactly what you're doing and give you the opportunity to talk, either to me or to Mr. Ringer, at any time you want to. Okay?

**The Defendant:** Uh-huh (yes).

Id. at 20-22.

Thereafter, the Court explained to the petitioner the Supreme Court's recent decision in Blakely v. Washington, and how that decision could impact the petitioner's sentence. Id. at 23-25. The petitioner stated that she understood. Id. at 25. The Court then questioned whether there would be any issues involving a firearm. Id. The government stated that there could be, and also, a role in the offense issue. Id. The Court then noted that although there were two potential "Blakely issues," the plea agreement did not appear to contain a "Blakely waiver." Id. at 27-28. Specifically, the Court stated:

**The Court:** So, there's nothing in the plea agreement about a Blakely waiver and there are no Blakely waivers in the plea agreement. There is one waiver and it's really not a waiver – well, there's one waiver of appellate rights and there's a stipulation of a certain amount of drugs.

Let me ask this question, Mr. Ringer. With regard to that stipulation, under Apprendi, you - the plaintiff – or the defendant has always had the right to have the jury prove up the weight of the drugs beyond a reasonable doubt, if you went to trial. So, does she understand that she's giving up this standard of proof, with regard to the amount of drugs?

**Mr. Ringer (petitioners' counsel):** I believe so, Your Honor. In fact, I discussed it with her

immediately before coming to the hearing.

**The Court:** Okay. All right. Then secondly, does the appellate waiver at a Level Thirty-Four or lower, include or except out <u>Blakely</u> issues, because they were not under consideration at the time you all decided to sign this plea?

**Ms. Wesley (the prosecutor):** There was no discussion of <u>Blakely</u> at all between the parties regarding this plea agreement.

**The Court:** Okay. Then it would be my position that since there was no discussion of it at all that it remains it.

**Ms. Wesley:** Correct.

**The Court:** Okay. With all that said, Ms. Good, are you prepared to proceed here?

**The Defendant:** Yes.

<u>Id.</u> at 28-29.

The Court then described supervised release to the petitioner. <u>Id.</u> at 29-31. In addition, the Court explained that the probation office would be preparing a presentence investigation report related to the petitioner's finances, background and the crime under indictment. <u>Id.</u> at 31-32. The petitioner was informed that both sides would be given the opportunity to object to the report and that afterward a sentencing hearing would be held. <u>Id.</u> at 32. The petitioner stated that she understood. <u>Id.</u> The Court explained that at the sentencing hearing, certain issues would be decided and the petitioner's sentence would be calculated. <u>Id.</u> At this point, the Court once again reminded the petitioner that she was giving up her right to appeal or collaterally attack her sentence at a base offence level of 34 or lower. <u>Id.</u> The petitioner stated that she understood. <u>Id.</u> The Court also explained the rights the petitioner would be giving up by pleading guilty and the burden of proof the government would have to meet if the case went to trial. <u>Id.</u> at 34-35. The petitioner stated that she understood. <u>Id.</u> at 36. The Court yet again, pointed out that the petitioner would be giving up her

right to appeal and collaterally attack her sentence, except in limited circumstances and urged the petitioner to raise any issue or concerns she had with the waiver provision. Id. at 36. The petitioner stated, "I'm fine." Id.

At this point, the Court asked defense counsel if he felt his client understood the nature of the charges and the consequences of the guilty plea. Id. Defense counsel stated that he did. Id. The government then proceeded to present testimony from Detective Steve Ford of the Morgantown Police Department and the Mon Valley Drug Task Force. Id. at 37-40. Afterward, the petitioner was given the opportunity to add to or correct the testimony of Detective Ford. Id. at 40. The petitioner declined and subsequently pled guilty to Count Six of the Indictment. Id. In doing so, the petitioner admitted that she had in fact, did what Detective Ford stated she did in his testimony. Id. Furthermore, the petitioner acknowledged that the range of relevant conduct described by Detective Ford was directly attributable to her. Id. at 41. The petitioner also confirmed that her plea was not the result of threat or force, and was not induced by promises outside the plea agreement. Id. The Court then explained that by pleading guilty to Count Six of the Indictment, the other charges in the Indictment would be dismissed. Id. After some question regarding the gun charge in Count Eight, the petitioner was informed by the Court that even though the government would be dropping Count Eight of the Indictment, the government could still seek a firearm enhancement at sentencing. Id. at 42-45. The petitioner later stated that she understood. Id. at 45.

After making sure that the petitioner understood the possibility of a firearm enhancement, the parties discussed a possible enhancement for the petitioner's role in the offense. Id. at 46-49. During this discussion, it was brought to light that the government believed it could prove much more than 500 grams of relevant conduct and that the stipulation was quite favorable to the

9

petitioner. Id. at 46-47. In addition, defense counsel stated that the evidence against the petitioner was quite strong, but that he believed the petitioner had an agreement with regard to the possible firearm enhancement and the possible leadership role. Id. at 47-48. Thus, the petitioner's decision not to enter a plea relating to those issues. Id. at 48.

Next, the Court confirmed that the petitioner was satisfied with counsel's performance and that she felt counsel had not left anything undone of failed to undertake any issue on her behalf. Id. at 49. The petitioner further confirmed that counsel shared discovery with her and that they discussed it. Id. at 49-50. Thereafter, the Court found that the petitioner was competent and capable of entering an informed plea. Id. at 50. The Court further found that the petitioner's plea was freely and voluntarily made, with full awareness of the consequences of the plea. Id. The Court, finding a factual basis for the plea, accepted the petitioner's plea of guilty. Id.

**B.    Appeal**

The petitioner filed a direct appeal on January 14, 2005. (Crim. Dckt. 99.) The petitioner's direct appeal was dismissed on August 17, 2005. (Crim Dckt. 123.)

**C.    Federal Habeas Corpus**

In her amended federal habeas petition, the petitioner raises the following grounds for relief:

(1) ineffective assistance of counsel for not objecting to the crack/powder differential;

(2) ineffective assistance of counsel for not objecting to and appealing the two point enhancement;

(3) ineffective assistance of counsel for not objecting to and appealing the enhanced drug weight;

(4) ineffective assistance of counsel for advising the petitioner to plead to an exaggerated

amount of drugs; and

(5) ineffective assistance of counsel for not objecting to or appealing the unconstitutional indictment.

**D.    The Government's Response**

In its response, the government asserts that the petitioner's claims lack merit and that the petitioner's § 2255 motion should be denied.

**E.    Good's Reply**

In her reply, the petitioner merely reiterates the arguments made in the petition and provides additional factual support for those claims.

**II.   Standard of Review**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar at 731. The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights

provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For instance, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in United States v. Lemaster, supra, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Lemaster, 403 F.3d at 732 (it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional

limitations").

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, the Court must first determine whether there is a valid waiver. In doing so,

> [t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted). In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated, "[w]e do not think the general waiver of the right to challenge" a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel." Lemaster, 403 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing, are not barred by a general waiver-of-appeal rights.

However, several courts have distinguished IAC claims raised in a § 2255 case, from those raised on direct appeal. In Braxton v. United States, 358 F.Supp.2d 497 (W.D.Va. 2005), the

13

Western District of Virginia noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.Supp.2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Western District of Virginia, distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

The Western District of Virginia further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143, 1147 (4th Cir. 1995), also supports such a distinction. Braxton at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of

counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

### III. Analysis

**A.  Validity of Waiver**

Here, all of the ineffective assistance of counsel grounds raised by the petitioner either occurred prior to the petitioner's entry of her guilty plea, or do not call into question the validity of the plea or the § 2255 waiver itself.  Therefore, the undersigned concludes that if the petitioner's waiver is valid, all of the grounds raised in the instant petition would be waived.  However, the petitioner does not challenge the validity of her waiver in these proceedings, nor could she successfully.  The record clearly shows that the petitioner understood the nature and consequences of her waiver and the petitioner should be bound by that waiver.

### IV.  Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be DENIED and DISMISSED from the Court's active docket because the petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack her conviction.[2]

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas

---

[2] Additionally, for the reasons set forth by the respondent in its response to the petition, the petitioner's claims also lack merit.

v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion to counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 6, 2007.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE